IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| BETTERSTEN R. WADE AND VERNICE ROBINSON, INDIVIDUALLY AND ON BEHALF OF ALL HEIRS AT LAW AND WRONGFUL DEATH BENEFICIARIES OF GEORGE ROBINSON, DECEASED | **PLAINTIFFS** |
| VS. | CAUSE NO. 3:19-CV-00897-CWR-FKB |
| CITY OF JACKSON, MISSISSIPPI; ANTHONY FOX, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; DESMOND BARNEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; LINCOLN LAMPLEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; AND AMERICAN MEDICAL RESPONSE, INC. | **DEFENDANTS** |

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs, Bettersten Wade and Vernice Robinson, by and through counsel, and file this their Memorandum of Authorities in Support of Plaintiffs' Combined Response in Opposition to Defendants' Motions for Summary Judgment, and in support of said combined response and memorandum of authorities would show unto the Court the following:

### FACTS

On January 13, 2019, George Robinson (also referred to as "Robinson" or "Mr. Robinson") was sitting in his motor vehicle while parked on Jones Street, in Jackson, Mississippi, in front of his

residence. Robinson had just returned from the grocery store, while others were at or on his premises having a barbecue. Mr. Robinson was not committing, nor had he committed, a crime, was not the subject of any active warrant for his arrest, nor did he fit a description of anyone who had committed a crime.

The Jackson Police Department had recently targeted Jones Street as a "hot spot" because of crime in the area. Pursuant to the Jackson Police Department's established policy and procedure regarding "jump out" squads, on January 13, 2019, officers with the Jackson Police Department targeted the Jones Street area where they employed this process of using "jump out" squads, whereby they interviewed and harassed citizens in the area.

On the date in question, Mr. Robinson pulled his vehicle in front of his residence and was subsequently approached by Defendant officers Anthony Fox ("Fox"), Desmond Barney ("Barney"), and Lincoln Lampkin ("Lampkin"); notably, Mr. Robinson had recently suffered a stroke and was in a frail state. Defendant officers Fox, Barney, and Lampkin approached Mr. Robinson and ordered him from his vehicle. As he was attempting to exit his vehicle, said officers pulled Mr. Robinson from the vehicle and thereafter brutally, viciously, and mercilessly beat Mr. Robinson by striking and kicking him. At no time during this event was Mr. Robinson threatening harm to himself or anyone else.

As a direct and proximate result of the Defendants' actions, Mr. Robinson suffered severe injuries to his head and head area. Such injuries resulted in cerebral edema, or brain swelling, which led to Mr. Robinson's death.

Following Mr. Robinson's death, Dr. J. Brent Davis, a pathologist and medical examiner, performed a post-mortem examination on Robinson's body at the Mississippi State Medical Examiner's Office. Subsequently, a Report of Postmortem Examination was produced by Dr. Mark LeVaughn, Chief Medical Examiner, based upon case notes, photographs, ancillary reports and investigational information. This report listed the cause of death as "Multiple Blunt Head Injury" and the manner of death as "Homicide."

Aggrieved by the death of Mr. Robinson and the improper actions or conduct by the Defendants, the present action was commenced on November 29, 2019.

## ARGUMENT

### Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042 (5th Cir. 1996). The Court views the "evidence and draw[s] reasonable inferences in the light most favorable to the non-movant." *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214 (5th Cir. 2011).

"Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that the better course would be to proceed to a full trial." *Firman v. Life Ins. Co., of N. Am.* 684 F.3d 533 (5th Cir. 2012).

### Use of Excessive Force by Defendant Officers

In the present case, the Plaintiffs assert, *inter alia*, that officers Fox, Barney, and Lampkin (collectively "Defendant officers") used excessive force in striking, seizing, and detaining Robinson in violation of the Fourth Amendment. The Plaintiffs' Complaint alleges that Fox, Barney, and Lampkin, while engaging in "jump out" activities, approached Robinson's automobile as it was parked in front of his home. Robinson was then ordered to exit his automobile. While Robinson was

attempting to exit his automobile, Fox, Barney, and Lampkin struck and kicked Robinson while throwing him to the ground.

During the assault of Robinson by officers Fox, Barney, and Lampkin, Robinson attempted to comply with the officers' request to exit his vehicle. Robinson did not physically assault or threaten the Defendant officers, and was not subject to an arrest warrant. Robinson simply could not move or exit his automobile instantaneously or rapid enough for the Defendant officers due to a recent stroke and his limited motor abilities. (See attached Exhibit "A" – Expert Witness Summary of Witness Statements).

Robinson did not merely suffer a "minor abrasion to his forehead" but, rather, was severely beaten by the Defendant officers. This position is supported by several third-party individuals who witnessed the outrageous beating of Robinson by the Defendant officers. These first-hand eyewitnesses produced statements to counsel for the Plaintiffs detailing Robinson's beating and subsequent injury. (See attached Exhibit "A" -- Expert Witness Summary of Witness Statements).

As a direct and proximate cause of being struck, kicked, and beaten by the Defendant officers, Robinson suffered severe head trauma, multiple contusions, and several fractured ribs. This severe head trauma ultimately led to Robinson's death several hours following his initial interaction with officers Fox, Barney, and Lampkin.

To state a claim for excessive force, the Plaintiffs must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481 (5th Cir. 2001). The second and third elements merge into a single objective-reasonableness inquiry, *see Scott v. Harris*, 550 U.S. 372 (2007), guided by the following *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386 (1989).

The Plaintiffs easily satisfy the injury prong. There is no question that Robinson suffered, at a minimum, cuts to his face, contusions, and fractured ribs as a result of the Defendant officers' conduct. Thus, the central question is whether the Plaintiffs pleaded or have shown facts that plausibly suggest the officers' conduct was objectively unreasonable.

Applying the *Graham* factors to this case, this Court must conclude that summary judgment is improper and should not be granted to the Defendant officers or the City of Jackson. Robinson was legally parked in front of his home when approached by the Defendant officers. When confronted by the Defendant officers, Robinson did not refuse to exit his vehicle, but simply did not exit quickly enough to satisfy the officers.

According to various witness accounts of the event with Robinson, there was no reason to believe that his actions posed a threat to the officers, himself, or to his neighbors. (See attached Exhibit "A" -- Expert Witness Summary of Witness Statements). And, while Robinson was sitting in and maintaining control of his vehicle, there is no evidence or other indication that he would flee or use the vehicle as a weapon. Indeed, the Defendants have not argued that Robinson attempted to flee. Most importantly for purposes of this response, there is a factual dispute over the nature of Robinson's inability or resistance to exiting his vehicle. Having recently suffered a stroke, Robinson's motor skills and ability to move were compromised. According to eyewitness accounts of the events, Robinson did not resist exiting his vehicle. Even assuming *arguendo* Robinson did somehow resist exiting his vehicle, his resistance was, at most, passive in that he merely attempted to exit the vehicle at a slow rate of speed. Robinson did not affirmatively, nor physically, resist the Defendant officers' commands.

It cannot be disputed that continued negotiations are more appropriate than actual force where the suspect is stopped or detained for a minor offense and is making no attempt to flee. There is no evidence whatsoever that Robinson attempted to flee the Defendant officers.

Finally, the jury could, and likely would, view the severity of Robinson's injuries as evidence of excessive force. "In evaluating excessive force claims, courts may look to the seriousness of injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur.'" *Brown v. Lippard,* 473 F.3d 384 (5th Cir. 2006). In the present case, following the outrageous beating of Robinson, he was transported to a hospital later that evening where he would ultimately succumb to his head injuries.

As to the allegations that the Defendant officers used excessive force in the removal of Robinson from his vehicle, the Fifth Circuit Court of Appeals has held that "that minor, incidental injuries" that occur in connection with an arrest do not give rise to a constitutional claim for excessive force. *Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007). However, in the case *sub judice*, the Plaintiffs have provided evidence that Robinson was handled and struck by the Defendant officers so as to cause severe brain injury and death. The injuries suffered by Robinson are certainly not *de minimis*. In fact, the cause of Robinson's death was ruled "multiple blunt head injury," with the manner of death being concluded a "homicide" by the Mississippi Office of the State Medical Examiner. (See attached Exhibit "B" – Report of Postmortem Examination). Thus, in light of the factual disputes outlined above, the Plaintiffs have established the presence of material factual disputes regarding the Defendant officers' use of excessive force as to Robinson.

## **No Qualified Immunity for Defendants**

In order to avoid liability for the injuries and death of Robinson, the Defendant officers and/or the City of Jackson contend they are entitled to qualified immunity as to the Plaintiffs' § 1983 excessive force and wrongful death claims. This is in spite of the fact that the Plaintiffs have shown

that Robinson was deprived of one or more Constitutional rights, namely those provided for in the Fourth (prohibits unreasonable searches and seizures) and Fifth (prohibits arbitrary deprivation of life, liberty, or property) Amendments and as applicable to the States through the Fourteenth Amendment. When the removal from his vehicle and arrest of Robinson occurred, he had clearly established rights to be free from excessive force and physical harm. *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008). It was also clearly established that the amount of force that the officers could use "depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee," *Bush*, 513 F.3d at 502.

Accepting the Plaintiffs' version of events for summary judgment purposes, this case involved: a traffic stop and/or detainment of Robinson unsupported by probable cause; Robinson's non-resistance, or at worst passive resistance to being removed from his automobile in compliance with his well-established rights under state law to resist an unlawful arrest (i.e., an arrest unsupported by probable cause); the officers' acts of grabbing, hitting, kicking, and throwing Robinson to the ground; and an aggressive and rough extraction of Robinson from his vehicle by the Defendant officers, causing a forceful blow to his head which resulted in his death. These alleged facts are sufficiently egregious to warrant a denial of qualified immunity because a reasonable officer would have known that the degree of force was unconstitutionally excessive under the circumstances. *Id.* at 501. Accordingly, the Defendant officers and/or the City of Jackson are not entitled to qualified immunity as to the § 1983 excessive force and wrongful death claims.

Even assuming *arguendo* that only one of the Defendant officers was the primary source for Robinson's injuries, two theories of § 1983 liability potentially apply in this matter as to any semi-active or inactive Defendant. Supervisor and bystander liability may apply if -- (1) the supervisor or bystander officer affirmatively participates in the acts that cause the constitutional deprivation, or (2) the supervisor or bystander officer implements unconstitutional policies that causally result in the

constitutional injury. *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404 (5th Cir. 2008). In order to establish supervisor liability for constitutional violations committed by subordinate officers, or for acts of bystanders, the Plaintiffs must show that the supervising officer or bystander officer acted, or failed to act, with deliberate indifference to violations of Robinson's constitutional rights committed by their subordinates or fellow officers. *Porter v. Epps*, 659 F.3d 440 (5th Cir. 2011) **There is bystander liability for an "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force…."** *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).

This theory applies to any allegations or defenses by the Defendant officers that they did not act, or acted passively, when Robinson was forced from his vehicle, thrown to the ground, and beaten. Each of the Defendants officers, either individually or with the assistance of other officers, should have taken reasonable measures to stop the beating and unlawful treatment of Robinson.

### Section 1983 Claims Against the City of Jackson

The Plaintiffs assert two theories as to municipal liability -- that the City of Jackson (1) had a policy of using "jump out" squads to unlawfully detain, arrest, harass, and unlawfully deprive citizens, including Robinson, of their constitutionally protected rights, and (2) failed to adequately train its officers in the questioning, detainment, and use of force regarding citizens. Liability may be imposed against a municipality under § 1983 if it is shown that: (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Hicks-Fields v. Harris Cty.*, 860 F.3d 803 (5th Cir. 2017).

The Plaintiffs' Complaint meets the first two prongs in that the City of Jackson had, and is believed to continue to have, a policy of using "jump out" squads to unlawfully detain, arrest, harass, and deprive citizens of their constitutionally protected rights. (See attached Exhibits "C" – U.S.

District Court Order; "D" – Deposition of Tarik Williams; "E" – Deposition of Timothy Bailey; and "F" – Deposition of Joseph Wade). On the date of the subject incident, Robinson was a target of a "jump out" squad. These "jump out" squads are well-known and encouraged and authorized by the City of Jackson's policymaking officials, and is a practice that is so persistent and widespread as to practically constitute the force of law. *See Connick v. Thompson*, 563 U.S. 51 (2011); *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009). This policy or custom of the City of Jackson acts and is applied in such a manner as to violate citizens', including Robinson's, constitutional rights included in the Fourth and Fifth Amendments and as applicable to the States through the Fourteenth Amendment.

To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir. 1997). The Plaintiffs' Complaint and supporting materials identify multiple "specific facts," whereby the City of Jackson has a policy and procedure of using "jump out" squads which is causally connected to the illegal detainment, use of excessive force, and death of Robinson. Further, this policy and procedure has resulted in scores of citizens being illegally searched and seized and denied their due process rights. This policy and procedure used and adopted by the City of Jackson is so persistent and widespread as to be unconstitutional on its face. *Connick*, 563 U.S. at 61.

The Plaintiffs' Complaint also meets § 1983's "policymaker" prong. In *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016), the Court of Appeals for the Fifth Circuit clarified that, because the identity of the policymaker is a legal question, courts should not grant motions to dismiss or summary judgment for failing to "plead [a] specific identity." Rather, "the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden*, 826 F.3d at 284. A city may be liable for an unwritten

custom where there is "[a]ctual or constructive knowledge of such custom" which is attributable to a city policymaker. *Hicks-Fields*, 860 F.3d at 808.

The Plaintiffs assert that supervisory personnel with the City of Jackson knew of, approved, and otherwise directed the use of "jump out" squads to detain, harass, and question individuals located within a target area. (See attached Exhibits "C" – U.S. District Court Order; "D" – Deposition of Tarik Williams; "E" – Deposition of Timothy Bailey; and "F" – Deposition of Joseph Wade). In fact, the Deputy Chief of Administration for the Jackson Police Department, Joseph Wade, made the following statements during his deposition –

> Q: All right. Without targeting, explain how you would describe it.
>
> A: Well, I think, just kind of repeating what I just stated, there is a strategy. It's an investigative measure and methods that we use to make contact with individuals suspected of criminal activity. It's **hot spot** policing, predictive policing. You have areas that are historically known for high crime, and those are the areas, based on crime stats, based on complaints – citizen complaints from the neighborhood, that you focus your efforts on.
>
> Whether that's Washington Addition, Virden Addition or whatever particular neighborhood, you go and police and conduct these special operations in the areas that crime is present and has a propensity for crime or violence. You want to prevent it before it happens or transpires.
>
> Q: Okay. And are you familiar with the City of Jackson and officers for the City of Jackson doing that in unmarked vehicles?

A: It is – yes, it does happen. It does transpire in unmarked vehicles. Vice-narcotics unit, some of our other unmarked units, that's some of their methods that they use.

………………………………….

Q: Okay. Have you heard of the term "jump out"?

A: Yes.

………………………………….

Q: But you have heard it used before?

A: Yes, sir, absolutely.

Q: And you've heard it used by police officers?

A: Yes.

Q: And when these stops are done, are you familiar with officers talking to people they don't suspect as criminals?

A: That wouldn't be – I guess it – well, it could happen if a person is not a criminal, but if you have reasonable suspicion, based on this being a **hot spot** area, you can do a temporary or brief detention talk – have a conversation, because you are in that particular area because it is a **hot spot** or a high-crime area.

………………………………….

Q: But do you agree the officers do that, that they – when they're in **hot spot** areas, they – they stop people to conduct field interviews?

A: I think that it does transpire.

Q: OK. It transpires in the Jackson Police Department?

A: Yes.

(See attached Exhibit "F" – Deposition of Joseph Wade, pgs. 29-32) (emphasis added).

On the date of the subject incident involving Robinson, the Defendant officers were directed by the Chief of the Jackson Police Department to saturate or "canvass" the Jones Street area and question citizens. (See attached Exhibit "G" – Albrecht deposition, pgs. 88-89). It is undisputed that the Deputy Chief of Administration and the Chief of the Jackson Police Department are policymakers within the Jackson Police Department. *Peterson,* 588 F.3d at 840. Accordingly, liability may be imposed upon the City of Jackson.

### **Failure to Train and Supervise Liability**

The Plaintiffs' failure-to-train and supervise theories require proof that -- 1) the City of Jackson failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Robinson's rights; and 3) the failure to train or supervise constituted deliberate indifference to Robinson's constitutional rights. *Thompson v. Uphsur Cty.*, 245 F.3d 447 (5th Cir. 2001). The Plaintiffs' Complaint and supporting materials identify multiple inadequacies in the Jackson Police Department's use of force, detainment, and "jump out" squads training programs. Based on the Defendant officers' conduct, it is readily apparent that the Jackson Police Department failed to properly train and supervise the Defendant officers in the use of force, detainment procedures, and the use of "jump out" squads. This is especially true considering the unlawful detainment and treatment of Robinson by the Defendant officers. Of these allegations involving failure to train and supervise, all bear a direct causal relationship to the specific constitutional violations at issue – namely unlawful search and seizure, unlawful detainment, excessive use of force, and the right of Robinson to be free from bodily harm.

The Plaintiffs also assert that the Defendant officers displayed a deliberate indifference to Robinson's constitutional rights. The standard for municipal fault generally involves "[a] pattern of similar constitutional violations by untrained employees" *Connick*, 563 U.S. at 62. However, "[a]

plaintiff may establish deliberate indifference" through "a single incident," *Burge v. St. Tammany Par.*, 336 F.3d 363 (5th Cir. 2003). The Supreme Court articulated the single-incident principle in *City of Canton v. Harris*, by way of a hypothetical:

> City policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be **"so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights**.

*City of Canton v. Harris*, 489 U.S. 378 n.10 (1989) (emphasis added). The obvious need for specific training and supervision, and the failure to provide the same by the City of Jackson is certainly present in the case *sub judice*. Had the Defendant officers been thoroughly and properly trained and supervised in the use of force, detainment, and "jump out" squads, it is likely that the injuries to and death of Robinson could have been avoided. Proper and thorough training and supervision would have given the Defendant officers the proper tools and guidance to interpret and apply legal principles, understand constitutional limits, and exercise sound and reasoned judgment in the performance of their jobs, and in their actions involving Robinson.

### Unlawful Detainment and Arrest of Robinson

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Const. amend. IV. The "seizure" of a "person," may take the form of "physical force" or a "show of authority" that "in some way restrain[s] the liberty" of the person. *Terry v. Ohio*, 392 U. S. 1 n. 16 (1968). As the Supreme Court explained in *California v. Hodari D.*, "[a]n arrest requires either physical force… or, where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U. S. 621 (1991).

The Court in *Hodari D.* further articulated that the application of force to the body of a person with intent to restrain is considered an arrest, no matter whether the arrestee escaped. *Hodari D.*, 499 U.S. at 624; *see also United States v. Mendenhall*, 446 U.S. 544 (1980) (holding that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave").

An arrest is reasonable and constitutionally permitted when "there is probable cause to believe that a criminal offense has been or is being committed," warrant or no warrant. *Devenpeck v. Alford*, 543 U.S. 146 (2004). That standard does not require that the officer believe that it is more likely than not that the suspect committed the offense. *See United States v. Watson*, 273 F.3d 599 (5th Cir. 2001). Instead, the officer must reasonably believe there was a "fair probability" that he or she committed the offense. *Piazza v. Mayne*, 217 F.3d 239 (5th Cir. 2000).

In the present case, Robinson was approached by the Defendant officers as he was seated in his vehicle in front of his home. (See attached Exhibit "A" -- Expert Witness Summary of Witness Statements). Robinson was not the subject of an arrest warrant, had not committed any crimes, and was in the act of committing a crime. (See attached Exhibit "H" – Deposition of Ronnie Arnold, pgs. 21-33). As stated by Ronnie Arnold, an eyewitness to the incident involving the Defendant officers and Robinson, during his deposition –

> Q: Did you see him – Fox comes up with this theory that some girl came to the car and he thought he was making a hand-to-hand transaction. Did you see anything like that?
>
> A: No, sir, no, sir.
>
> Q: Would that be true if he said that?
>
> A: No, sir, not that I know of, no, sir. I didn't see any of that.
>
> Q: And you were standing right – how far were you from them?
>
> A: I was at my – I was at the steps.

> Q: How many feet or yards do you think that is from the car?
>
> A: Probably about two – two yards.

(See attached Exhibit "H" – Deposition of Ronnie Arnold, pgs. 32-33).

As a defense to the Plaintiffs' claim involving the unlawful and unconstitutional detainment and arrest of Robinson, the Defendant officers allege that they possessed probable cause to effectuate the detainment and arrest of Robinson. However, this allegation is simply untrue and unsupported by any independent witness. This defense consists of fabricated and untrue allegations that Robinson had committed, or was in the process of committing, a crime so as to justify the Defendant officers' original detainment and subsequent beating and arrest of Robinson. Thus, the Defendant officers' and/or the City of Jackson's claims that they lawfully detained Robinson based on probable cause is without merit.

## **Liability Under the Mississippi Tort Claims Act**

The Mississippi Tort Claims Act is a limited waiver of governmental immunity from civil tort suits. Miss. Code Ann. § 11-46-5(1). Partial immunity is retained, such as for governmental employees who are performing a discretionary function. Miss. Code Ann. § 11-46-9(d). The Mississippi Supreme Court has not allowed "discretionary function" to override a different and otherwise redundant exemption that no liability for negligence exists for the acts "of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation…." Miss. Code Ann. § 11-46-9(b). That would mean that the immunity to a negligence suit provided under section 11-46-9(b) would apply only when there is no negligence (i.e., when "ordinary care" is exercised). *See Brewer v. Burdette*, 768 So. 2d 920 (Miss. 2000). In the case *sub judice* it is not necessary to resolve this issue to determine the outcome of this case.

A governmental entity and its employees may be liable for any claims arising out of any act or omission of an employee while engaged in the performance or execution of police or fire protection duties when such employee acted in "reckless disregard" of the safety and well-being of any person not engaged in criminal activity at the time the injury occurred. Miss. Code Ann. § 11-46-9(c). "Reckless disregard" has been defined under this exemption as willful or wanton conduct (i.e., a wrongful act that is knowing and intentional). *Turner v. City of Ruleville*, 735 So. 2d 226 (Miss. 1999). Thus, governmental entities and their employees may be held civilly accountable for those acts amounting to recklessness as has been defined specifically under this exemption. *Turner*, 735 So. 2d at 228.

In the present case, the Defendant officers' and the City of Jackson's conduct presented an extreme and unreasonable danger to Robinson, as well as the general public. This assertion is based on the following: 1) the detainment and arrest of Robinson was clearly unlawful and in violation of the Fourth, Fifth, and Fourteenth Amendments; 2) the Defendant officers unreasonably and without proper justification struck and threw Robinson to the ground causing a substantial injury to his head, which ultimately led to his death; 3) the Defendant officers failed to use proper negotiation tactics prior to resorting to the use of force; 4) the manner of Robinson's death was ruled a "homicide" committed by the Defendant officers; and 5) the Defendant officers failed to properly balance Robinson's safety versus the immediate apprehension of an alleged criminal suspect. Thus, all of the circumstances establish that the Defendant officers acted with more than simple negligence. In reviewing the totality of the circumstances, the Defendant officers and/or the City of Jackson acted with reckless disregard for the safety of Robinson and the general public. Thus, tort liability may be imposed on the City of Jackson and the Defendant officers.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, Bettersten Wade and Vernice Robinson, would respectfully request that this Court enter an Order denying the

Defendants' Motions for Summary Judgment. Further, the Plaintiffs would request any other such relief as this Court deems appropriate.

Dated: April 14, 2021.

                              BETTERSTEN WADE AND VERNICE ROBINSON

                              BY:/s/ Dennis C. Sweet, III
                                  Dennis C. Sweet, III

Dennis C. Sweet, III (MSB #8105)
Sweet & Associates
158 East Pascagoula Street
Jackson, Mississippi 39201
Telephone: (601) 965-8700

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing document with the Clerk of the Court, via the Court's MEC/ECF system, which provided an electronic copy of the same to all counsel of record.

SO CERTIFIED, this, the 14th day of April, 2021.

                              /s/ Dennis C. Sweet, III
                              Dennis C. Sweet, III