IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

**BETTERSTEN R. WADE AND VERNICE
ROBINSON, INDIVIDUALLY AND ON
BEHALF OF ALL HEIRS AT LAW AND
WRONGFUL DEATH BENEFICIARIES
OF GEORGE ROBINSON, DECEASED**                           **PLAINTIFFS**

VS.                                      **CAUSE NO. 3:19-CV-00897-CWR-FKB**

**CITY OF JACKSON, MISSISSIPPI;
ANTHONY FOX, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES; DESMOND
BARNEY, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES; LINCOLN
LAMPLEY, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES; AND AMERICAN
MEDICAL RESPONSE, INC.**                                 **DEFENDANTS**

---

### PLAINTIFFS' SUPPLEMENT TO COMBINED MEMORANDUM AND RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

COME NOW the Plaintiffs, Bettersten Wade and Vernice Robinson, by and through counsel, and file this their Supplement to Combined Memorandum and Response in Opposition to Defendants' Motions for Summary Judgment (ECF Documents 174, 179), and in support of said response would show unto the Court the following:

1. On May 17, 2021, a criminal trial was held in the Circuit Court of Hinds County, Mississippi regarding certain criminal charges filed against the Defendants, Lincoln Lampley and Desmond Barney. During this trial, testimonial evidence was provided by several individuals, including, but not limited to, Andrew Aycox (American Medical Response employee), Dr. Mark

LeVaughn (forensic pathologist with Mississippi Department of Public Safety), Dr. James Coleman (teaching radiologist with University of Mississippi Medical Center), and Connie Bolton (neighbor to George Robinson). Such testimonial evidence was recorded and recently provided to the Plaintiffs via a written transcript.

2. Andrew Aycox ("Aycox") testified that he responded to a call for service by the Jackson Police Department, on January 13, 2019, wherein he encountered George Robinson. (See attached Exhibit "A" – Trial Transcript, pg. 184). Despite encountering Mr. Robinson, Aycox, while on duty with his employer, American Medical Response ("AMR"), confessed to improperly listing the call for service as a "no patient contact / no patient found" call. (See attached Exhibit "A" – Trial Transcript, pgs. 200-201, 210). In other words, Aycox falsified a medical record pertaining to Mr. Robinson. Aycox further confessed that he generated a narrative patient report the following day upon learning that Mr. Robinson had been admitted to a local hospital for a fatal head injury. (See attached Exhibit "A" – Trial Transcript, pg. 212). This is despite his normal practice of generating or filing a patient narrative report immediately after a call for service. (See attached Exhibit "A" – Trial Transcript, pgs. 201, 212). If this were not enough, Aycox confessed that he "cut a corner" or falsified a patient record in reporting a "no patient contact / no patient found" call so as to relieve himself of his obligation to generate or file a patient narrative report. (See attached Exhibit "A" – Trial Transcript, pg. 223). Due to Aycox's and/or AMR's blatant falsification of a patient healthcare record or report, this Court should disregard or discount any statement or position offered or relied on by the Defendants and involving Aycox or AMR.

3. Dr. Mark LeVaughn, a forensic pathologist and author of the forensic report relating to Mr. Robinson, testified unequivocally that a subdural hematoma due to "blunt impact to the head" was the cause of Mr. Robinson's death. (See attached Exhibit "A" – Trial Transcript, pg. 351). Further, Dr. LeVaughn opined that Mr. Robinson's subdural hematoma likely began to develop immediately after

his injury and that it is reasonable to expect symptoms from a subdural hematoma to be apparent within three hours of injury. (See attached Exhibit "A" – Trial Transcript, pg. 384). Thus, had Aycox followed AMR's established protocol pertaining to patient refusal, it is likely that Mr. Robinson's serious head injury would have been timely recognized and appropriate life-saving action taken.

    4.    Dr. James Coleman, a seasoned radiologist and professor at the University of Mississippi Medical Center, testified that a CT scan taken of Mr. Robinson subsequent to the altercation with the Defendant officers showed he suffered a non-displaced rib fracture which was acute in nature. (See attached Exhibit "A" – Trial Transcript, pgs. 416, 429). Dr. Coleman also testified that a non-displaced rib fracture may not result in bleeding and be readily apparent if the fracture does not violate the intercostal artery, despite ingesting blood-thinning medication. (See attached Exhibit "A" – Trial Transcript, pg. 429). This position by Dr. Coleman squarely contradicts the opinions offered by the Defendants' expert witnesses, including Dr. Timothy Usey, that Mr. Robinson incurred no injury to his chest or abdomen areas. Further, Dr. Coleman is by far no "resident" physician who "misread" the CT scan of Mr. Robinson, as alleged by Dr. Usey. Thus, the Defendants' assertion that Mr. Robinson displayed no injury to his chest, abdomen, and rib areas otherwise indicating that he was not beaten is completely without merit.

    5.    Finally, Connie Bolton ("Bolton"), Mr. Robinson's former neighbor, testified that on January 13, 2019, she witnessed "jump out boys" conduct a raid in her neighborhood. (See attached Exhibit "A" – Trial Transcript, pg. 5). She described such "jump out boys" as being different from the police in that they jump out of vehicles and can be aggressive or non-aggressive. (See attached Exhibit "A" – Trial Transcript, pg. 5). Bolton further testified that during such raid, Mr. Robinson was seated in his vehicle directly in front of his home as the "jump out boys" surrounded his vehicle. (See attached Exhibit "A" – Trial Transcript, pgs. 7-8). After surrounding Mr. Robinson's vehicle, the "jump out boys" "got in the car," "mashed him up against the steering wheel," and then "slammed him on the ground." (See attached Exhibit "A" – Trial Transcript, pgs. 8-13). Bolton further elaborated that when

the "jump out boys" "body slammed" Mr. Robinson to the ground, his head first struck the ground and that a "foot came up" to strike Mr. Robinson. (See attached Exhibit "A" – Trial Transcript, pgs. 8-13). Based on Bolton's testimony, the Defendants' position that Mr. Robinson was not beaten and did not suffer any injuries to his chest or any other areas of his body is nothing more than specious argument.

6. The Plaintiffs incorporate this Supplement into their Combined Memorandum and Response in Opposition to Defendants' Motions for Summary Judgment (ECF Documents 174, 179), including all exhibits hereto.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, Bettersten Wade and Vernice Robinson, would respectfully request that this Court enter an Order denying the Defendants' Motions for Summary Judgment (ECF Documents 174, 179). Further, the Plaintiffs would request any other such relief as this Court deems appropriate.

Dated: June 21, 2021.

BETTERSTEN WADE AND VERNICE ROBINSON

BY:/s/ Dennis C. Sweet, III
Dennis C. Sweet, III

Dennis C. Sweet, III (MSB #8105)
Sweet & Associates
158 East Pascagoula Street
Jackson, Mississippi 39201
Telephone: (601) 965-8700

CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing document with the Clerk of the Court, via the Court's MEC/ECF system, which provided an electronic copy of the same to all counsel of record.

SO CERTIFIED, this, the 21st day of June, 2021.

/s/ Dennis C. Sweet, III
Dennis C. Sweet, III